864 P.2d 668

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Timothy Scott MALAND, Defendant–Appellant.**

**No. 18452.**

Court of Appeals of Idaho.

Nov. 26, 1993.

Mark A. Jackson, Coeur d'Alene, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

On September 15, 1989, a jury found Timothy Scott Maland guilty of rape, second degree kidnapping, and infamous crime against nature. *See* I.C. §§ 18–6101 (rape), 18–4501, –4503 (kidnapping), 18–6605 (infamous crime against nature). The district court entered judgments of conviction, imposed sentences and denied several of Maland's motions. The court later determined Maland's sentences to be illegal. Maland was resentenced. The court then suspended the new sentences, and placed Maland on probation. He subsequently violated probation, prompting the court to rescind the order suspending the sentences. The court then reduced the sentences and ordered that Maland be incarcerated. On appeal, Maland challenges most of the rulings involved. We find several of the issues raised by Maland to be moot. In respect to the issues remaining for consideration, we affirm.

On October 25, 1989, the court imposed a unified sentence of forty-two months with an eighteen-month minimum period of confinement for the charge of infamous crime against nature. This sentence was to be served first. The court also imposed two unified sentences consisting of five-year minimum terms followed by fifteen-year indeterminate terms for rape and kidnapping. These sentences were ordered to be served concurrently with each other but consecutively to the sentence for infamous crime against nature. The court retained jurisdiction over Maland with respect to the rape and kidnapping convictions, indicating that the court intended to reconsider the sentences on those charges after Maland had served the eighteen months of incarceration imposed for infamous crime against nature.

Maland filed a motion for new trial, a notice of appeal and a motion under I.C.R. 35 to reduce the sentences. The court denied these motions. Maland then filed a second Rule 35 motion, this time claiming that the sentences were illegal. This motion evidently was based on the parties' confusion and uncertainty as to whether the sentences required that Maland be sent to the North Idaho Correctional Institution at Cottonwood under the retained jurisdiction program after serving his first eighteen months or whether he was to be incarcerated at the main correctional facility in Boise. The state filed a similar motion, asserting that the court's attempt to retain jurisdiction while imposing consecutive sentences was illegal. The court denied the state's motion on August 16, 1991.

However, on September 25, 1991, the court concluded that Maland's second Rule 35 motion was meritorious and entered an order declaring the sentences illegal. The court resentenced Maland on November 6, 1991. This time, for the crimes of rape and infamous crime against nature, the court imposed unified sentences of life, with ten-year minimum periods of confinement. On the kidnapping conviction, the court imposed a unified sentence of twenty-five years, with a ten-year minimum period of confinement. The court ordered that all of the sentences would be served concurrent-

ly.[1] The court then suspended the sentences and placed Maland on probation for twenty-five years.

In October, 1992, the Department of Corrections filed a report alleging that Maland had violated the terms of his probation. Maland filed a written admission to the alleged violation. After a hearing on November 6, 1992, the court revoked probation and reinstated the sentences. However, the court reduced the determinate portion of the sentences to two years on each offense, to be served concurrently. On December 17, 1992, Maland filed a notice of appeal from the court's order revoking probation as well as reinstating and reducing the sentences. Maland filed a third motion to reduce the sentences under Rule 35 on November 18, 1992, twelve days after his probation was revoked. A hearing on the motion, initially scheduled for December 15, 1992, but vacated, was held on March 30, 1993. At the hearing the court determined it was without jurisdiction to consider the third Rule 35 motion because the motion had not been timely filed.

On appeal, Maland has filed three briefs in three consecutive years. In his brief submitted on February 19, 1991, Maland asserted that his original sentences were excessive. He also contends that the court erred by denying his first Rule 35 motion and by not dismissing the infamous crime charge after the preliminary hearing. The second brief, filed on July 27, 1992, raises one additional issue: that the twenty-five year probation period was excessive and an abuse of discretion. The latest brief, filed on July 23, 1993, raises two more issues: that the court erred when it revoked probation and that the reduced sentences—primarily the indeterminate life terms of those sentences—were excessive. The state submitted its only appellate brief on October 2, 1992, before Maland was found to have violated his probation. Therefore, the state has not responded to Maland's challenges to the revocation of probation or to

the final reduction of the sentences. However, the state asserts, without cross-appealing, that the court erred when it placed Maland on probation.

At the outset, we note that the only sentences which remain in effect are the reduced sentences imposed when Maland's probation was revoked. Therefore, the issues Maland raises concerning his original sentences and his first Rule 35 motion are moot. Similarly, the questions raised by the state and Maland concerning the fact that he was placed on probation, and the challenge to the length of probation, are moot because probation has been revoked. We address Maland's remaining challenges in turn.

■ The first issue we discuss is whether the court erred when it refused to dismiss the charge of infamous crime against nature after the preliminary hearing. Maland argues that the victim's (S.M.) testimony was insufficient to support the charge. He claims that at the hearing, S.M. testified only that Maland had performed oral sex on her, not that he had penetrated her, therefore the state failed to establish an essential element of the claim. *See* I.C. § 18–6606 ("Any sexual penetration, however slight, is sufficient to complete the crime against nature.")

■ Our review of this issue is limited. At trial, S.M. testified that Maland penetrated her with his tongue. Moreover, Maland has not disputed the fairness of the trial, but focuses only on the preliminary hearing. When a defendant has been convicted following a fair trial, we will not examine on appeal the sufficiency of the evidence at a preliminary hearing upon which a magistrate determined there was probable cause to bind the defendant-appellant over for trial. *State v. Streeper*, 113 Idaho 662, 664–65, 747 P.2d 71, 73–74 (1987); *State v. Maylett*, 108 Idaho 671, 672, 701 P.2d 291, 292 (Ct.App.1985).

---

1. *See State v. Hoisington*, 105 Idaho 660, 671 P.2d 1362 (Ct.App.1983) (on correction of illegal sentence, the district court may impose any punishment permitted under statutes in effect at the time the offense was committed, even though the length of the new sentence exceeds the term originally imposed so long as the record does not demonstrate vindictiveness by trial court).

■ Next, we address Maland's claim that his current sentences, reinstated and reduced when probation was revoked, are excessive. Maland raised this issue to the district court by filing his third Rule 35 motion on November 18, 1992, twelve days after the court revoked probation and reduced the sentences on November 6, 1992. However, the sentences that the court reinstated and reduced were actually imposed a year earlier on November 6, 1991. When the court ruled on Maland's motion, I.C.R. 35 stated in pertinent part:[2]

> The court may reduce a sentence within 120 days after the sentence is imposed or within 120 days after the court releases retained jurisdiction. The court may also reduce a sentence upon revocation of probation as provided by law. Motions to correct or modify sentences under this rule must be filed within 120 days of the entry of judgment imposing sentence....

A sentence is imposed when it is initially pronounced. *State v. Sutton*, 113 Idaho 832, 833, 748 P.2d 416, 417 (Ct.App.1987); *State v. Salsgiver*, 112 Idaho 933, 934, 736 P.2d 1387, 1388 (Ct.App.1987). Maland's sentences were initially pronounced on November 6, 1991, when his original sentences were held to be illegal. Maland filed his motion one year after that date, far beyond the 120-day limit. He also did not request a sentence reduction "upon revocation of probation," but twelve days later. Revocation of probation is not to be equated with the imposition of sentence and does not trigger a new 120-day filing period. *State v. Fox*, 122 Idaho 550, 552, 835 P.2d 1361, 1362 (Ct.App.1992); *Sutton, supra.* For these reasons, we uphold the district court's conclusion that it was without jurisdiction to consider the third Rule 35 motion. Moreover, after considering the nature of the offenses and Maland's character as revealed by the reports and record submitted in this case, we hold that the sentences pronounced by the district court on November 6, 1991, are reasonable and that the court did not abuse its sentencing discretion. *State v. Sanchez*, 115 Idaho

776, 769 P.2d 1148 (Ct.App.1989); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App.1982).

■ The final question we address is whether the court erred when it revoked probation. Idaho Code § 20–222 prescribes that the revocation of probation is within the discretion of the district court. In exercising that discretion the court resolves three inquiries:

> First, was a condition of probation actually violated? Ordinarily, this is a question of fact. Second, does the violation justify revoking the probation? This is a question addressed to the judge's sound discretion. Third, and finally, if probation is revoked, what prison sentence should be ordered? Specifically, if a prison sentence previously has been pronounced but suspended, should that sentence be ordered into execution or should the court order a reduced sentence as authorized by I.C.R. 35? This question, too, is one of discretion.

*State v. Adams*, 115 Idaho 1053, 1054, 772 P.2d 260, 261 (Ct.App.1989). When deciding whether probation should be revoked, the court examines whether probation is achieving the goal of rehabilitation and is consistent with the protection of society. *State v. Beckett*, 122 Idaho 324, 325, 834 P.2d 326, 327 (Ct.App.1992). Upon review of a revocation order, the appellate court must determine whether the district court acted within the boundaries of discretion, consistent with any legal standards applicable to specific choices, and whether the district court reached its decision by an exercise of reason. *Id.; State v. Drennen*, 122 Idaho 1019, 1021, 842 P.2d 698, 700 (Ct.App.1992).

The terms of Maland's probation required that he obey all federal, state and local laws and comply with the rules, regulations and requirements of the Idaho Department of Corrections. He was also prohibited from becoming intimately involved with or dating anyone without the prior

---

**2.** Effective July 1, 1993, Rule 35 was revised to allow a court to reduce a sentence "upon revocation of probation or upon motion made with-

in fourteen (14) days after the filing of the order revoking probation."

approval of his counselor. Maland did not object to any of these conditions when he accepted probation.

Maland admitted that he violated probation by having a brief homosexual encounter which he quickly terminated because he became repulsed by the experience. He voluntarily reported his actions to his counselor and his probation officer. At the evidentiary hearing Maland argued that his probation should not be revoked because he had committed only a brief, technical violation and had immediately disclosed his wrongdoing. He produced positive reports from his employer, a home-builder, who stated that Maland was a responsible full-time employee whose workmanship was very good. His counselor stated that although Maland presented a safety risk to society, so did all sex offenders, and he was willing to continue to treat Maland. Maland's probation officer testified that because Maland's counselor stated he would continue to work with Maland, the probation officer did not recommend that probation be revoked. Another probation officer who had worked with Maland when he was on intense supervised probation stated that Maland was compliant and abided by all the rules during their association. Relatives and friends also submitted letters of support for Maland.

Of concern to the court, however, was that Maland's violation indicated more than just a quickly aborted homosexual encounter. Maland also had helped the man with whom he later had the encounter look for a woman they both thought might be available—for what purpose is not clear in the record. This assistance took the form of a late-night drive through two trailer parks in an attempt to locate the woman's home. When their trip was unsuccessful, the two men returned to the man's home, where they talked all night and decided to attempt the first homosexual encounter for either of them. After they terminated the encounter, Maland returned to his trailer next door and read his probation requirements which indicated that he was not to have intimate relations or date anyone without his counselor's prior approval.

Notwithstanding this condition, the next day Maland left his place of employment early to go to the Coeur d'Alene city beach, where he planned to work on some assignments required by his counselor and hoped to find a woman who might be interested in him. Maland stated that he was lonely and needed "to find a date." He saw a young woman but did not approach her. He left the park and that night discussed the events at his group therapy session. A few days later his counselor wrote a letter to Maland's probation officer stating that Maland had only recently been honest about the rape for which he was on probation, but this was a positive step. The counselor expressed concern "that Scott is very emotionally unstable and his behavior is highly unpredictable and at times irrational." Referring to the incidents involving Maland's male friend and at the city beach, the counselor stated that "Scott discussed in a group two recent behaviors that if not outright violations of his probation are certainly a concern as far as his stability and potential to reoffend." The counselor reported that he had repeatedly discussed with Maland that the treatment contract he had signed with the counselor prohibited Maland from having unauthorized contact with women and being alone with a woman without prior approval. The counselor noted the public safety might be compromised by the fact that Maland, a convicted rapist, was breaching his treatment contract in an unauthorized attempt to meet women.

At the hearing, the court found that Maland's probation violation was more than just technical. Maland's sexual act with the other man could have been separately charged as a crime in Idaho. The court echoed the concern of the state and Maland's counselor that the probation violation significantly paralleled the conduct preceding the rape for which Maland had been convicted. Although the court recognized that being in the community and continuing counseling presented Maland's best hope for rehabilitation, the court's primary concern—as dictated by case law—was the protection of society. Testimony indicated

that Maland presented a risk of varying intensity.

Although it appeared that Maland was progressing during probation, his actions became inconsistent with the protection of society. Noting the unpredictable risk Maland presented, the court determined that the best way to promote the security of the community was to revoke Maland's probation and to reinstate his sentences in reduced form. It is apparent that the court acted consistently with applicable legal standards and reached its decision by an exercise of reason. Disagreement with that decision does not make it an abuse of discretion. We conclude that the court properly exercised its discretion in revoking Maland's probation.

Accordingly, the judgments of conviction and sentences imposed, together with the orders denying relief under I.C.R. 35 and revoking probation, are affirmed.

LANSING and PERRY, JJ., concur.